UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANDRE D. PAYNE,

       Plaintiff,

       v.                       CAUSE NO. 3:24-CV-505-AZ

RON NEAL, et al.,

       Defendants.

OPINION AND ORDER

Andre D. Payne, a prisoner without a lawyer, is proceeding in this case on two claims. First, he is proceeding against Case Manager Sara McCormick, Case Manager Morgan Thate, Warden Ron Neal, Deputy Warden of Operations Jason Nowatzke, Safety Hazard Manager Deborah Taylor, Sanitation Supervisor Thomas Frazier, Major Doug Wardlow, and Lieutenant Dennis Koen "for deliberate indifference to the build-up of bird feces in his cellblock from November 2023 to the present in violation of the Eighth Amendment[.]" ECF 4 at 4. Second, he is proceeding "against the Warden of Indiana State Prison in his official capacity for injunctive relief related to his ongoing need to be housed under sanitary conditions of confinement[.]" *Id.* The defendants filed a motion for summary judgment. ECF 85. Payne filed a response, and the defendants filed a reply. ECF 101, 102, 103. Payne filed a cross-motion for summary judgment, and the defendants filed a response. ECF 92, 94, 99, 100. Both summary judgment motions are now ripe for ruling. Because the arguments for the cross-motions entirely overlap, they will be addressed collectively.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard does not change when parties file cross-motions for summary judgment. *International Brotherhood of Electrical Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). "When considering the plaintiffs' motion for summary judgment, the court must consider the evidence in the light reasonably most favorable to the defendants, and vice versa." *Eaton v. Onan Corp.*, 117 F. Supp. 2d 812, 818 (S. D. Ind. 2000); *see also O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) ("With crossmotions, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made.") (citation omitted). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The

objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate shelter and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834; *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee County*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)). "Negligence, or even objective recklessness, is insufficient to satisfy deliberate indifference." *Stockton*, 44 F.4th at 615. Thus, a prison official that takes "reasonable steps" to prevent harm to a prisoner is not liable for subsequent injuries, even if the official acted negligently or did not act as quickly as possible to abate all risks. *Bagola v. Kindt*, 131 F.3d 632, 647-48 (7th Cir. 1997); *see also Hunter v. Mueske*, 73 F.4th 561, 566 (7th Cir. 2023) (as long as a prison official takes measures "reasonably calculated" to address the risk faced by an inmate, he cannot be held liable under § 1983, even though he ultimately failed to prevent the injury).

The defendants provide affidavits from themselves, Indiana State Prison's ("ISP") Maintenance Supervisor Scott Clouse, and ISP Sanitation Manager Alisha Winn,

3

who attest to the following facts: D-Cell House, the restricted housing unit at ISP, consists of five separate floors, referred to as "ranges." ECF 85-1 at 1. Each range consists of individual cells and is covered by a metal grate, which prevents birds from flying onto the ranges. *Id.* at 1, 6 (photograph of D-Cell House). Between the metal grate and the individual cells is a hallway for inmates to walk to and from their cells in the stairwell, which prevents birds from entering or coming near the inmates' cells. *Id.* at 2. Above the 500 range is a solid ceiling, known as the "top of the block," which prevents bird droppings from falling into the D-Cell House. *Id*. At the very top of D-Cell House is an exhaust system, which is about a floor higher than the 500 range and is located on the outer part of the metal grate that covers the ranges in D-Cell House. *Id.* at 2, 6. Any bird that might enter the D-Cell House and nest on top of the exhaust system would not be "anywhere close" to the cells located in D-Cell House. *Id.* at 2. The exhaust system pulls in fresh air from outside D-Cell House, passes it through air filters, and then pushes it through a series of vents that are located at the top of the cellhouse facing the floor. ECF 85-7 at 1-2. It is impossible for birds to nest or linger directly on the actual vents that push air into D-Cell House, and it is impossible for bird feces or feathers to collect directly on the vents that push hot air out. *Id.*

Inmates often break out windows in D-Cell House, which allows birds to fly into the cellhouse. ECF 85-7 at 1; ECF 85-6 at 2. Additionally, birds are able to enter through the cellhouse's doors when they are opened to allow inmates outside for recreation or other activities in other parts of the ISP complex. ECF 85-6 at 2. As the maintenance supervisor at ISP, Maintenance Supervisor Clouse oversees efforts to fix broken

windows in D-Cell House. ECF 85-7 at 1. When a window is broken, ISP staff puts in a work order for the maintenance department to fix the window. *Id.* at 1. The maintenance department is typically able to fix a broken window within a few days "and certainly no longer than a week" after the work order is entered. *Id.*

While birds have been able get into D-Cell House on occasion, Warden Neal has never seen more than two to five birds in the cellhouse at any one time. ECF 85-1 at 2. In an effort to combat the bird issue in D-Cell House, Warden Neal has worked with sanitation, maintenance, and safety hazard staff to implement a number of solutions. *Id.* In late 2023, an electronic bird deterrent system was installed, which played bird of prey noises in the cellhouse to deter birds from entering or remaining in the cellhouse. *Id.* at 3. In August 2024, maintenance staff installed bird deterrent systems over the doors in D-Cell House, which consist of mesh coverings over the doors that prevent birds from entering the cellhouse. *Id.* Also in August 2024, a pinwheel system was installed outside of D-Cell House to deter birds from coming close to the windows. *Id.* Maintenance staff also puts out bird poison to kill any birds present in D-Cell House. *Id.*

Sanitation staff regularly cleans and sanitizes common areas of D-Cell House and removes any bird droppings that are present. ECF 85-1 at 3. They also clean and sanitize the "top of the block" by physically entering the "top of the block area" and cleaning with anti-bacterial soap and water. *Id.* Sanitation staff also cleans the duct work at the top of D-Cell House approximately every six months by entering the "top of the block" through a door in the ceiling and using a lift to reach the duct work and clean up any bird excrement. *Id.;* ECF 85-6 at 2. On these occasions, sanitation staff follows the

guidelines from the Center for Disease Control and Prevention by wetting the area with water first to prevent any bird "dust" or fungus spores from spreading, then mopping and sanitizing the area with anti-bacterial soap and using a large brush to physically clean the ducts. ECF 85-6 at 2. This task is only performed every six months because it presents logistical and physical challenges to the sanitation department and there is not enough bird excrement in that area to warrant more frequent cleaning. *Id.* at 2. The sanitation department's lift was out of service between February 2024 and June 2024 and had to be repaired by an outside company, which caused a small delay in the sanitation department's ability to clean the duct work during that time. *Id* at 2-3. When the duct work is being cleaned, Sanitation Manager Winn personally brings Payne a face mask to be worn during the cleaning process to ameliorate his concerns regarding the bird "dust." *Id.* at 3.

In response, Payne attests to the following facts: Around November 2022, Payne was moved to the 500 range of D-Cell House and noticed several birds living on top of the exhaust system, which was about 10 to 15 feet away from the cells on the 500 range. ECF 92-1 at 2. Payne reported these conditions to various prison officials, and in September 2023 wrote a "Request for Interview" to numerous defendants requesting that the birds be removed and the bird excrement be cleaned. *Id.* at 3. Payne had asthma and began experiencing breathing issues which he attributed to the presence of the birds in the cellhouse. *Id.* at 3-5. Payne received a "bed pass" from medical staff in January 2024 that he should be moved from his cell in the 500 range to a cell below the

6

300 range, but there was a delay in carrying out this move. *Id* at 4-5.[1] At the time Payne wrote his affidavit in April 2025, he had been moved to a cell on the 200 range and attests there are "bird feces and bird dander on the vent in front of my cell D202 East that has been sitting for 3 weeks." *Id.* at 7. He attests prison officials no longer allow sanitation to clean the D-Cell House and there is no longer any sanitation plan in place at D-Cell House. *Id.*[2]

The defendants argue summary judgment is warranted in their favor because (1) the conditions in the D-Cell House were not objectively serious and did not deny Payne "the minimal civilized measure of life's necessities;" and (2) they were not deliberately indifferent to those conditions. Payne argues summary judgment is warranted in his favor because the defendants were deliberately indifferent to his complaints of the buildup of bird feces in D-Cell House.

---

[1] The defendants attest they were not aware of Payne's bed pass, were never informed of Payne's bed pass by medical staff or by Payne, and were not responsible for moving Payne's bed, as this task would have fallen to the Unit Team Staff, who are not parties in this lawsuit. ECF 85-2 at 2; ECF 85-3 at 2; ECF 85-4 at 2; ECF 85-5 at 3; ECF 85-8 at 1-2; ECF 85-9 at 2. Payne asserts that "prison officials" were aware of his bed pass (ECF 94 at 7), but he does not dispute any of the defendants' individual attestations (*see* ECF 102) and provides no evidence showing any individual defendant was aware of his bed pass or was responsible for moving his bed.

[2] In response to this attestation, the defendants provide an attestation from Officer Frazier, a correctional officer in the sanitation department, who explains that sometime in 2025 due to security concerns the *inmates* who make up sanitation staff at ISP no longer were permitted to clean in D-Cell House, but Officer Frazier and other correctional officers in the sanitation department still were able to clean the cellhouse during that time. ECF 100-10 at 2-3. This change in policy did not impact the sanitation department's ability to clean the duct work, as inmates working in the sanitation department never were allowed to use the lift to access that part of the cellhouse. *Id.* The court accepts as true that inmates working in the sanitation department were not allowed to clean the D-Cell House for a period of time in 2025 due to security concerns, but that correctional officers in the sanitation department still were able to clean the cellhouse.

Here, no reasonable jury could conclude the defendants exhibited anything approaching "a total unconcern" for Payne's welfare in the face of serious risks, as the undisputed facts show they took measures "reasonably calculated" to address the risk posed by the buildup of bird feces in the D-Cell House. *See Hunter*, 73 F.4th at 566 (as long as a prison official takes measures "reasonably calculated" to address the risk faced by an inmate, he cannot be held liable under § 1983, even though he ultimately failed to prevent the injury). Specifically, both parties agree D-Cell House has an issue with birds entering the cellhouse and that Payne complained to the defendants about this issue. Crediting Payne's version of events, the court accepts as true that Payne witnessed numerous birds and a buildup of bird feces in the D-Cell House which caused or contributed to his breathing issues. But the defendants provide evidence they took measures reasonably calculated to address the risk posed to Payne by fixing all broken windows within a week, installing an electric bird deterrent system and a pinwheel system around D-Cell House in August 2024 to deter birds from entering the cellhouse, placing bird poison around the cellhouse, regularly cleaning and sanitizing the common areas of D-Cell House, cleaning the duct work at the top of the cellhouse every six months, and giving Payne a mask each time the duct work was cleaned to help ameliorate his concerns.

In his response to the defendants' statement of material facts, Payne attempts to dispute some of these facts. He states, "Windows are broke and not fixed," "Sanitation staff at Indiana State Prison do not clean and sanitize D Cell House to remove bird feces," and "There is no electronic bird deterrent system in D Cell House also there is

not a pinwheel system on the outside of D Cell House to deter birds." ECF 102 at 2. In support of each of these assertions, Payne cites to "ECF 80," which consists of over 200 pages of documents including his entire deposition and various medical records, grievance documents, and IDOC policies. With their summary judgment motion, the defendants provided Payne a copy of Fed. R. Civ. P. 56(c)(1)(A), which informed him that to genuinely dispute a fact he must support his assertion by "citing to particular parts of materials in the record." They also provided him a copy of N.D. Ind. L.R. 56-1(b)(2)(C), which informed him that he must "cit[e] to evidence supporting each dispute of fact." The defendants have alleged specific facts regarding the steps they took to remedy the buildup of bird feces in D-Cell House, and Payne cannot genuinely dispute these facts merely by making a conclusory assertion that the facts are not true and citing to a large collection of documents. *See Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) ("[I]nferences relying on mere speculation or conjecture will not suffice" to create a genuine dispute); *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 547 n.10 (7th Cir. 2002) ("it is not the responsibility of this court to ferret through the record for support"); *Litsinger v. Forest River, Inc.*, 536 F. Supp.3d 334, 353 (N.D. Ind. 2021) ("it isn't the court's job to find the needle in the haystack, the truffle in the field, or the Waldo on the page"). Nothing in ECF 80 disputes Sanitation Manager Winn's attestation that she regularly cleans the cellhouse, Maintenance Supervisor Clouse's attestation that he fixes all windows within a week, or Warden Neal's attestation that maintenance staff installed bird deterrent systems and a pinwheel system around D-Cell House in August 2024. Moreover, Payne does not attempt to dispute any of these

9

facts in his sworn affidavit, and does not otherwise explain how he has any personal knowledge to dispute any of these facts. *See* ECF 92-1. Payne's attestation that birds and bird feces were present in D-Cell House at various times does not dispute the defendants' attestations that they regularly cleaned D-Cell House's common areas, cleaned the duct work every six months, and took steps to reduce the amount of birds in the cellhouse. Therefore, Payne vague assertion that these facts are not true is insufficient to create any genuine dispute.

As discussed, deliberate indifference poses "a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton*, 44 F.4th at 615. While it is undisputed that birds and bird feces were present in D-Cell House, the record shows the defendants did not act with anything approaching "a total unconcern" for Payne's welfare regarding this issue, but rather took measures reasonably calculated to respond to the issue and provide Payne the minimal civilized measure of life's necessities. Therefore, no reasonable jury could conclude the defendants violated Payne's Eighth Amendment rights.

For these reasons, the court:

(1) GRANTS the defendants' summary judgment motion (ECF 85);

(2) DENIES the plaintiff's summary judgment motion (ECF 92) and

(3) DIRECTS the clerk to enter judgment in favor of the defendants and against Andre D. Payne and to close this case.

SO ORDERED on this 17th day of March 2026.

/s/ Abizer Zanzi
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT